UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON PICORELLI, on behalf of himself
and all others similarly situated,

                      Plaintiff,

v.

WATERMARK CONTRACTORS INC.,
KEVIN MAHER, *and* HUGH HARRIS

                      Defendants.

No. 21-CV-2433 (KMK)

ORDER & OPINION

Appearances:

Brett Reed Gallaway, Esq.
Jason Scott Giaimo, Esq.
Lee Scott Shalov, Esq.
McLaughlin & Stern, LLP
New York, NY
*Counsel for Plaintiff*

Lauren Rayner Davis, Esq.
Aaron C. Schlesinger, Esq.
Peckar & Abramson, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Jason Picorelli ("Plaintiff") brought this Action against his former employer, Watermark Contractors Inc. ("Watermark"); Kevin Maher ("Maher"), Watermark's chief executive officer, founder, principal, director, and owner; and Hugh Harris ("Harris"), a Watermark principal, director, and owner (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 207 and 216(b), the New York Labor Law ("NYLL") §§ 195 and 663, and 12 New York Codes, Rules and Regulations ("NYCRR") § 142-2.2.  (*See* Compl. ¶¶ 1,

19, 21 (Dkt. No. 1).)  The Parties now seek approval of their proposed settlement.  (*See* Letter from Brett R. Gallaway, Esq., to Court (May 24, 2021) ("Gallaway Letter") (Dkt. No. 19); Gallaway Letter Ex. A (Stipulation of Settlement and Release Agreement ("Proposed Settlement Agreement" or "PSA") (Dkt. No. 19-1).)  For the reasons that follow, the Parties' application is denied without prejudice.

## I.  Background

### A.  Factual Background

Plaintiff performed construction work for Watermark, a construction and construction management business, from "approximately 2008 through the summer of 2020."  (Compl. ¶¶ 10–11, 18.)  Plaintiff typically worked six days a week, from 7:00 a.m. to 6:00 p.m.  (*Id.* ¶ 12.)  Plaintiff alleges that he was paid $40.00 per hour—his regular rate of pay—for all hours worked, even though he regularly worked over 40 hours a week, for which time he should have been paid overtime compensation, "in the amount equal to one[-]and[-]one[-]half times" his regular rate of pay.  (*Id.* ¶¶ 13–14, 17.)  Plaintiff alleges that for all overtime hours, Defendants "claimed on Plaintiff's pay stubs that such payments were for Plaintiff's 'business expenses,' but in reality, were payments for wages owed, albeit at Plaintiff's regular hourly wage rate rather than his appropriate overtime wage rate.  Defendants utilized this allegedly unlawful and fraudulent pay scheme amongst all non-exempt hourly paid employees in an effort to deliberately avoid paying overtime wages."  (*Id.* ¶ 16.)  Plaintiff alleges that Defendants' failure to pay overtime compensation violates the FLSA, (*id.* ¶¶ 62–68), NYLL, (*id.* ¶¶ 70–76), and NYCRR, (*id.*).

Plaintiff also alleges that Defendants violated various provisions of the NYLL by failing to provide regular wage statements and related notices, and by failing to maintain appropriate payroll and employment records for their workers.  (*See id.* ¶¶ 33–34, 78–81.)  Plaintiff seeks to

"recover unpaid wages, earned but unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and costs owed to Plaintiff and Hourly Employees." (*Id.* ¶ 1.) Plaintiff demands $9,999,000 in damages. (Civil Cover Sheet 1 (Dkt. No. 2).) Plaintiff purported to bring his claims individually and on behalf of a class of similarly situated hourly employees who are or were employed by Defendants in the last three years ("FSLA Collective Class") or six years ("New York Class") who were not paid overtime compensation for overtime work. (Compl. ¶ 30.)

### B. Procedural History

Plaintiff filed his Complaint on March 19, 2021. (Dkt. No. 1). On April 15, 2021, the Defendants filed a Motion for Extension of Time to File an Answer, (Dkt. No. 17), which the Court granted on April 16, 2021, (Dkt. No. 18). On May 25, 2021, Plaintiff submitted to the Court the Proposed Settlement Agreement, which he requested that the Court approve. (*See* Gallaway Letter 1.)[1]

## II. Discussion

### A. Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." FED. R. CIV. P. 41(a)(1)(A). "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require

---

[1] Plaintiff's letter requesting approval of the settlement is dated May 24, 2021, but it was filed on the docket on May 25, 2021. (*See generally* Gallaway Letter.)

the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 577 U.S. 1067 (2016). Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at

4

*2 (S.D.N.Y. Apr. 27, 2015) (same).  Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).  To this end, courts require information surrounding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y 2015)) (first ellipsis in original) (quotation marks omitted).

B. Analysis

1. Whether the Settlement Amount is Fair and Reasonable

Under the PSA, Defendants agree to pay $30,000 (the "Settlement Amount") to resolve Plaintiff's claims. (PSA ¶ 8.) Of the Settlement Amount, $10,000 will go to Plaintiff and $20,000 will go to Plaintiff's counsel for fees and costs. (*Id.*)

The Court does not have sufficient information to determine whether the settlement sum is fair and reasonable. Neither the Complaint nor the PSA provides specific facts explaining how the Parties calculated the Settlement Amount. In the Complaint, Plaintiff alleged that he generally worked approximately 26 hours of overtime per week, for which he was paid his regular rate of pay. (*See* Compl. ¶¶ 12–14.) Plaintiff also gave a specific example, alleging that during the week of February 16, 2020, Plaintiff worked approximately 61 hours of overtime, though he was only paid his regular rate of pay. (Compl. ¶ 12.)[2] Other than this general estimate and specific example, Plaintiff did not specify how many total hours he claims to have worked overtime, nor did he provide any documentation supporting his assertions. Thus, "the Court will not approve the PSA without additional information regarding the underlying data and methodology that were used to generate the Settlement Amount." *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2021 WL 1964724, at *4 (S.D.N.Y. May 17, 2021); *see also*

---

[2] Based on Plaintiff's general estimate, if Plaintiff worked approximately 26 hours of overtime every week for the 11.5 years of his employment and was only paid his regular rate of pay ($40.00 per hour) instead of a rate of one-and-a-half times his regular rate of pay for the overtime hours ($60.00 per hour), then Defendants owe Plaintiff approximately $310,960.00 in overtime pay. (*See* Compl. ¶¶ 12–14.) However, this number does not account for the fact that some weeks Plaintiff worked more than 26 hours of overtime, such as the week of February 16, 2021, during which Plaintiff allegedly worked a total of 61 overtime hours. (*Id.*) The PSA fails to explain how, based on the numbers provided in the Complaint, $10,000 is a fair and reasonable sum.

6

*Gaspar*, 2015 WL 7871036, at *1 ("[T]o evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate the bona fides of the dispute." (quotation marks omitted)).  The Parties are therefore instructed to submit to the Court a more detailed explanation of how they arrived at the recovery sum of $10,000 for Plaintiff.[3]

### 2. Good Faith

Despite the reservations noted above, the Court is satisfied that the PSA was negotiated competently, in good faith, and at arm's length, and that there was no fraud or collusion.  (*See* Gallaway Letter 1 (noting that the settlement "was negotiated at arms'-length between experienced counsel").)

### 3. Similarly Situated Plaintiffs

Plaintiff named several individuals in his Complaint, describing them as other employees who regularly worked over 40 hours a week for Defendants but were never paid overtime compensation: Henry Lloyd, Jason Montague, Joseph Lulanaj, Julio Diaz, David Cruz, Richard Frusciante, John Bell, Nicholas Viola, and Elizabeth Maloney.  (Compl. ¶ 16.)  However, none of these individuals is a party to this lawsuit, and Plaintiff will be the only employee affected by the settlement and dismissal of the lawsuit.  *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and

---

[3] The PSA states that Plaintiff's counsel negotiated for Plaintiff's re-employment with Defendants, which may only be terminated by Defendants for cause; according to Plaintiff, this weighs in favor of this Court finding the Settlement Amount fair and reasonable.  (PSA 2; *see also Santos v. Yellowstone Props., Inc.*, No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) ("Because the plaintiffs no longer work for [the] defendants, the [c]ourt has little concern that [the] defendants used improper leverage to secure the settlement.").)  Though this argument has merit, the PSA still does not contain enough information for the Court to determine whether the Settlement Amount is fair and reasonable.

dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015 WL 7736551, at *2 (the fact that "[n]o other employee ha[d] come forward" supported settlement approval); *see also Santos*, 2016 WL 2757427, at *3 (same). These facts, therefore, weigh toward the Court's approval of the PSA.

### 4. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'").

Here, the PSA provides, "[Plaintiff] knowingly and voluntarily releases and forever discharges [Defendants] of and from any and all wage and hour claims, as of the Effective Date of this Agreement, consistent with *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015)." (PSA ¶ 6.)  The PSA provides several exceptions to the release provision:

> [Plaintiff] does not waive, release, or discharge: (i) any right to file an administrative charge or complaint with or testify, assist, or participate in an investigation, hearing, or proceeding conducted by the Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or other similar federal, state, or local administrative agencies, although [Plaintiff] waives any right to monetary relief related to such a charge or administrative complaint; and (ii) claims which cannot be waived by law, such as claims for unemployment benefit rights under the New York Unemployment Insurance Law and COBRA and workers' compensation; (iii) any rights to vested benefits, such as pension or retirement benefits, the rights to which are governed by the terms of the applicable plan documents and award agreements. If [Plaintiff] applies for unemployment benefits, [Defendants] shall not actively contest it.  However, [Defendants] will respond truthfully and completely to any inquiries by the New York Department of Labor concerning the termination of [Plaintiff's] employment.

(*Id.*)  Plaintiff also notes that the PSA "does not include . . . any general releases."  (Gallaway Letter 3.)  Given that the provision releases Defendants only from wage and hour claims, and given its several listed exceptions, the Court finds that this release provision is appropriately narrow.  *See Pucciarelli v. Lakeview Cars, Inc.*, 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving release that, "while broad, . . . relates specifically to wage and hour issues without encompassing, for example, prospective discrimination claims").

    5.  Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)).  Although courts may elect to award fees by considering either the lodestar method—the

9

reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (quotation marks omitted). The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, Plaintiff's counsel seeks an award of $20,000, which is approximately two-thirds of the total Settlement Amount. (*See* PSA ¶ 8.) "Except in extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 343 (S.D.N.Y. 2016) (quoting *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015); *see also Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases." (collecting cases)). In addition, awards "significantly smaller" than the customary one-third amount "are also common when warranted by the facts of a particular

case," such as when, as here, "settlement has been reached in a relatively short period of time, with little, if any, discovery or motion practice." *Guzman v. Joesons Auto Parts*, No. 11-CV-4543, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013) (collecting cases). This is grounds to question the PSA.

Further, counsel has not provided "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (quotation marks omitted); *see also Lopez*, 176 F. Supp. 3d at 343–44 (concluding that the record did not contain "sufficient justification" for the proposed attorneys' fees where no "further detail [was] provided concerning . . . the actual time and efforts of [the] plaintiffs' counsel").[4] The Court must have this additional information to make a final determination as to whether the proposed award is reasonable. Thus, Plaintiffs' counsel is instructed to provide this information, along with supporting documentation, in the Parties' revised request for settlement approval.

---

[4] Here, Plaintiff alleges that Plaintiff's counsel collectively spent 28.75 hours of time on this matter at rates of $625.00 for a partner with "substantial experience in litigating wage-and-hour disputes on behalf of both employees and management" and $485.00 per hour for an associate with "significant wage-and-hour experience." (Gallaway Letter 3.) However, Plaintiff did not provide any contemporaneous billing records, nor did Plaintiff specify how many hours each lawyer spent on the matter or the dates on which those hours were billed.

11

III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is denied without prejudice. The Parties may reapply for approval of a settlement that complies with the Court's determinations in this Order.

SO ORDERED.

DATED:    October 26, 2021
          White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE