UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON PICORELLI, *on behalf of himself and all others similarly situated*,

Plaintiff,

v.

WATERMARK CONTRACTORS INC., KEVIN MAHER, *and* HUGH HARRIS

Defendants.

No. 21-CV-2433 (KMK)

ORDER & OPINION

Appearances:

Brett Reed Gallaway, Esq.
Jason Scott Giaimo, Esq.
Lee Scott Shalov, Esq.
McLaughlin & Stern, LLP
New York, NY
*Counsel for Plaintiff*

Lauren Rayner Davis, Esq.
Aaron C. Schlesinger, Esq.
Peckar & Abramson, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Jason Picorelli ("Plaintiff") brought this Action against his former employer, Watermark

Contractors Inc. ("Watermark"); Kevin Maher ("Maher"), Watermark's chief executive officer,

founder, principal, director, and owner; and Hugh Harris ("Harris"), a Watermark principal,

director, and owner (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of

1938 ("FLSA"), 29 U.S.C. §§ 207 and 216(b), the New York Labor Law ("NYLL") §§ 195 and

663, and 12 New York Codes, Rules and Regulations ("NYCRR") § 142-2.2.  (*See* Compl. (Dkt.

No. 1).)  The Parties now seek approval of their Proposed Settlement Agreement ("PSA").  (*See*

Letter from Brett R. Gallaway, Esq., to Court (May 24, 2021) ("May Gallaway Letter") (Dkt.

No. 19); Gallaway Letter Ex. A ( "Proposed Settlement Agreement" or "PSA") (Dkt. No. 19-1);

Letter from Brett R. Gallaway, Esq., to Court (Nov. 2, 2021) ("Nov. Gallaway Letter") (Dkt. No.

23); Nov. Gallaway Letter Ex. 1 ("Billing Statement") (Dkt. No. 23-1)); Letter from Jason S.

Giaimo to Court (Feb 23, 2022) ("Giaimo Letter") (Dkt. No. 24).)  For the reasons that follow,

the Parties' application is denied without prejudice.

## I.  Background

### A.  Factual Background

Plaintiff performed construction work for Watermark, a construction and construction

management business, from "approximately 2008 through the summer of 2020."  (Compl. ¶¶ 10–

11, 18.)  Plaintiff typically worked six days a week, from 7:00 a.m. to 6:00 p.m.  (*Id.* ¶ 12.)

Plaintiff alleges that he was paid $40.00 per hour—his regular rate of pay—for all hours worked,

even though he regularly worked over 40 hours a week, for which time he should have been paid

overtime compensation, "in the amount equal to one[-]and[-]one[-]half times" his regular rate of

pay.  (*Id.* ¶¶ 13–14, 17.)  Plaintiff alleges that for all overtime hours, Defendants "claimed on

Plaintiff's pay stubs that such payments were for Plaintiff's 'business expenses,' but in reality,

were payments for wages owed, albeit at Plaintiff's regular hourly wage rate rather than his

appropriate overtime wage rate.  Defendants utilized this allegedly unlawful and fraudulent pay

scheme amongst all non-exempt hourly paid employees in an effort to deliberately avoid paying

overtime wages."  (*Id.* ¶ 16.)  Plaintiff alleges that Defendants' failure to pay overtime

compensation violates the FLSA, (*id.* ¶¶ 62–68), NYLL, (*id.* ¶¶ 70–76), and NYCRR, (*id.*).

Plaintiff also alleges that Defendants violated various provisions of the NYLL by failing

to provide regular wage statements and related notices, and by failing to maintain appropriate

payroll and employment records for their workers.  (*See id.* ¶¶ 33–34, 78–81.)  Plaintiff seeks to

"recover unpaid wages, earned but unpaid overtime compensation, liquidated damages, interest,

attorneys' fees, and costs owed to Plaintiff and Hourly Employees."  (*Id.* ¶ 1.)  Plaintiff demands

$9,999,000 in damages.  (Civil Cover Sheet 1 (Dkt. No. 2).)  Plaintiff purported to bring his

claims individually and on behalf of a class of similarly situated hourly employees who are or

were employed by Defendants in the last three years ("FSLA Collective Class") or six years

("New York Class") who were not paid overtime compensation for overtime work.  (Compl.

¶ 30.)

### B. Procedural History

The procedural background of this Action has been summarized in this Court's previous

Opinion & Order dated October 26, 2021, denying the PSA (the "2021 Opinion").  (*See* Op. &

Order ("2021 Op.") (Dkt. No. 22).)  The Court therefore supplements the procedural history of

the case since the issuance of the 2021 Opinion.  On October 26, 2021, the Court denied the

Parties' request of approval of their PSA without prejudice.  (*Id.*)  On November 2, 2021,

Plaintiff filed a letter again requesting that the Court approve the PSA and attaching documents

in support of that request.  (Dkt. No. 23.)  On February 23, 2022, Plaintiff submitted another

letter reiterating that request.  (Dkt. No. 24.)

## II.  Discussion

### A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an

action without a court order is made "[s]ubject to . . . any applicable federal statute."  Fed. R.

Civ. P. 41(a)(1)(A). "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 577 U.S. 1067 (2016). Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks

omitted); *see also Zamora v. One Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1

(S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at

*2 (S.D.N.Y. Apr. 27, 2015) (same).  Conversely, factors which weigh against finding a

settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB*

*Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same);

*Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014

WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*,

2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to

evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187,

2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).  To this end, courts

require information surrounding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the
> employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of
> [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs'
> success on the merits, and evidence supporting any requested fee award.

*Id.* (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y 2015)) (first

ellipsis in original) (quotation marks omitted).

B.  Analysis

The Court remains satisfied that the PSA was negotiated in good faith, that Plaintiff is the

only employee who will be affected by the settlement and dismissal of the lawsuit, and that the

release provision is appropriately narrow.  (*See generally* 2021 Op.)  The Court will therefore

limit its discussion to the factors that it did not approve in its 2021 Opinion.

1.  Whether the Settlement Amount is Fair and Reasonable

Under the PSA, Defendants agree to pay $30,000 (the "Settlement Amount") to resolve

Plaintiff's claims.  (PSA ¶ 8.)  Of the Settlement Amount, $10,000 will go to Plaintiff and

$20,000 will go to Plaintiff's counsel for fees and costs.  (*Id.*)

As the Court stated in its 2021 Order,

> The Court does not have sufficient information to determine whether the settlement
> sum is fair and reasonable.  Neither the Complaint nor the PSA provides specific
> facts explaining how the Parties calculated the Settlement Amount.   In the
> Complaint, Plaintiff alleged that he generally worked approximately 26 hours of
> overtime per week, for which he was paid his regular rate of pay. (*See* Compl. ¶¶
> 12–14.)  Plaintiff also gave a specific example, alleging that during the week of
> February 16, 2020, Plaintiff worked approximately 61 hours of overtime, though
> he was only paid his regular rate of pay.  (Compl. ¶ 12.)  Other than this general
> estimate and specific example, Plaintiff did not specify how many total hours he
> claims to have worked overtime, nor did he provide any documentation supporting
> his assertions.

(2021 Order 6.)  None of the subsequently submitted letters provides further evidence supporting

Plaintiff's assertions.  (*See* Nov. Gallaway Letter; Billing Statement; Giaimo Letter.)  In these

letters, Plaintiff merely claimed that the immediate relief of $10,000 and future employment

earnings—which amount to $83,200 per year—are preferable to the cost and uncertainty of

continued litigation.  (*See* Nov. Gallaway Letter; Billing Statement; Giaimo Letter.)  The

possibility of Plaintiff facing evidentiary and legal battles cannot justify the Court's approval of

the Settlement Amount as fair and reasonable without any documentation supporting the

Settlement Amount or the total possible recovery amount.  *See Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, (S.D.N.Y. 2022 June 14, 2022) (approving a settlement considering the "substantial evidentiary and legal battles" only after the parties had produced wage and hour records).  Thus, "the Court will not approve the PSA without additional information regarding the underlying data and methodology that were used to generate the Settlement Amount."  *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2021 WL 1964724, at *4 (S.D.N.Y. May 17, 2021); *see Gaspar*, 2015 WL 7871036, at *1 ("[T]o evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate the bona fides of the dispute." (quotation marks omitted)); *see also Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018); Letter from William D. Frumkin to Court Ex. B ("Calculation of Total Possible Recovery"), *Rojas v. Bronx Moon LLC*, No. 17-CV-5825 (Aug 22, 2018) (Dkt. No. 35-2) (approving a settlement where the plaintiff produced a detailed calculation of total possible recovery amounts and where the settlement amount was a "substantial proportion of the maximum possible recovery").

Plaintiff relies on *Santos v. Yellowstone Properties, Inc.*, No. 15-CV-3968, 2016 WL 2757427, at *2 (S.D.N.Y. May 10, 2016), where the court approved the parties' settlement agreement as fair and reasonable.  *See id.* However, the present case can be distinguished from *Santos*, because the parties in that case calculated maximum amount that the plaintiff could recover based on the defendant's records, and determined that the settlement amount constituted 81.8% of the total possible recovery.  *See id.* The Parties provide no such information or calculations here.  Nor did the Parties provide an explanation as to why no such records were provided.  *Cf. Penafiel*, 2015 WL 7736551, at *2 (approving a settlement without wage and hour records where the parties proved that neither party was able to produce such records).

Thus, without any documentation supporting the Settlement Amount or the total possible

recovery amount, or without evidence that neither Party could not produce records, the Court

cannot determine whether the Settlement Amount is fair and reasonable.  The Parties are

therefore again instructed to submit to the Court a more detailed explanation of how they arrived

at the recovery sum of $10,000 for Plaintiff.

2.  Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is

entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL

4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198,

663(1)).  Although courts may elect to award fees by considering either the lodestar method—the

reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—

or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he

trend in [the Second] Circuit is toward the percentage method."  *Wal-Mart Stores, Inc. v. Visa*

*U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  But even where attorneys' fees are sought

pursuant to the percentage of the fund method, "counsel must submit evidence providing a

factual basis for the award."  *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent*

*Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel

must provide a factual basis for a fee award, typically with contemporaneous time records.").  A

proper fee request thus includes "contemporaneous billing records documenting, for each

attorney, the date, the hours expended, and the nature of the work done."  *Nights of Cabiria*, 96

F. Supp. 3d at 181 (quotation marks omitted).

Here, Plaintiff's counsel seeks an award of $20,000, which is approximately two-thirds of

the total Settlement Amount.  (*See* PSA ¶ 8.)  In the 2021 Opinion, the Court noted that

Plaintiff's counsel has not provided "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." (2021 Op. 11 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181 (quotation marks omitted)). Plaintiff's counsel has since provided the Court with a Billing Statement laying out the hours worked on this case by both counsel and staff. (*See generally* Billing Statement.) These records include the date, hours expanded, and nature of the work done. (*See id.*)

Although the Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation," except in "extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount." *Fisher v. SD Protection Inc.*, 948 F.3d 593, 602. (2d Cir. 2020); *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 343 (S.D.N.Y. 2016) (citing same principle). *Compare Fisher*, 948 F.3d at 597 (holding that the district court abused its discretion by deciding that the "maximum fee percentage" that counsel may be awarded in an FLSA suit is generally limited to 33% of the total settlement amount) *with Hyun v. Ippudo USA Holdings*, No. 14-CV-8706, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (noting that the percentage method is more appropriate than the lodestar method "where the parties were able to settle relatively early"); *see also Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases." (collecting cases)); *Martinez v. Gulluoglu LLC*, No. 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (rejecting 36% fee award); *Lazaro-Garcia v. Sengupta Food Services*, No. 15-CV-4259, 2015 WL 9162701, at *4 (rejecting 39% fee award); *Nights of Cabiria*, 96 F. Supp. 3d at 173, 181–82 (rejecting fee award of between 40 and 43.6%); *Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-

5507, 2014 WL 1100135, at \*3 (S.D.N.Y. Mar. 20, 2014) (rejecting fee award of 52% and collecting cases rejecting fee awards over 33–1/3% of the total settlement value).

In addition, awards "significantly smaller" than the customary one-third amount "are also common when warranted by the facts of a particular case," such as when, as here, "settlement has been reached in a relatively short period of time, with little, if any, discovery or motion practice." *Guzman v. Joesons Auto Parts*, No. 11-CV-4543, 2013 WL 2898154, at \*4 (E.D.N.Y. June 13, 2013) (collecting cases); *see also Poko-St. Ann.*, 176 F. Supp. 3d at 343 (rejecting proposed attorney's fees because "the case settled before [discovery or motion practice]" and the parties failed to provide sufficient "detail concerning the manner in which the [settlement amount] was calculated" or sufficient justification "for allocating over 40% of a compromise settlement package to counsel").

Plaintiff's counsel argues that when the additional compensation of $83,200 from Plaintiff's future employment with Defendant is considered, the requested attorney's fees represent less than 18% of the total Settlement Amount. (Nov. Gallaway Letter 2.) However, the Court is not aware of any cases where the plaintiff's future earnings were taken into consideration when calculating the appropriate amount of attorney's fees. As noted, without taking Plaintiff's future employment into account, the requested fees amount to approximately two-thirds of the total Settlement Amount—which is twice the amount typically approved by courts within the Second Circuit.

The Parties argue alternatively that the requested attorneys' fees are appropriate because they were calculated based on the lodestar method. (*See id.*) The Second Circuit encourages the use of hours billed or the lodestar amount as a "cross-check" on a percentage fee award and to yield the "presumptively reasonable fee." *See Hernandez v. Compass One, LLC*, No. 20-CV-

7040, 2021 WL 4925561, at *4.  When using the lodestar method, the Court must determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).  Here, three attorneys and one paralegal represented Plaintiff in this action, and request hourly rates as follows: (1) Jason S. Giaimo - $485.00; (2) Lee S. Shalov - $750.00; (3) Brett R. Gallaway - $625.00; (4) Paul C. Beyersdorf - $175.00.  (*See* Billing Statement.)  In this district, courts generally award experienced wage-and-hour attorneys between $300 and $400 per hour.  *Agureyev v H.K. Second Ave. Rest., Inc.*, No. 17-CV-7336, 2021 WL 847977, *at* *11 (collecting cases); *but see generally Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

The Parties rely on *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220-21 (S.D.N.Y. 2015), in which the court applied the lodestar method as a cross-check and approved hourly rates of $650-900 per hour for partners and $350-600 per hour for associates.  *Id.* at 221 (noting that "the lodestar method [was] used as a cross-check").  However, in *Raniere*, the counsel requested one third of the settlement in fees, while in this case, Plaintiff's counsel is requesting two-thirds of the Settlement Agreement.  *Id.*  Plaintiff's counsel also relies on *Ansdher Civil v. Starrett City, Inc.*, No. 18-CV-2256, 2019 WL 13096407 (E.D.N.Y. Apr. 17, 2019), and *Morales v. Rochdale Village, Inc.*, No. 15-CV-502, (E.D.N.Y. May 6, 2020) (Dkt. No. 228) ("*Morales*"), both of which approved the counsels' hourly rates as reasonable.  However, in both cases, the amount of requested attorney's fees also equaled one-third of the total settlement fund.  *See Ansdher*, 2019 WL 13096407, at *5–6 (the total attorney's fees of $1,583,333.33 in addition to the reimbursement of litigation expenses of $50,397.25, equals to approximately 34% of the total

settlement amount of $4.75 million); *Morales* at 9 (the total attorney's fees of $874,500, equals to one-third of the total settlement amount of $2.65 million).

The Parties have not provided any extraordinary circumstances that would justify the approval of fees representing approximately twice as much as typically approved by courts in this district using the percentage method. To the contrary, the fact that the settlement was reached within a short time with little, if any, discovery or motion practice supports a fee *smaller* than the customary one-third amount. *See Guzman*, 2013 WL 2898154, at *4 (emphasis added). Alternatively, even if the Court were to calculate fees based on the lodestar method, the requested fees would still not be justified, because the hourly rates here greatly exceed the prevailing market rate, and the Court lacks specific information about the background and experience of the attorneys for whom they seek an award of fees to justify these high hourly rates. *See Williams*, 368 F. Supp. 3d, at 658.

The Parties are instructed to provide such a justification, with supporting documentation, in the Parties' revised request for settlement approval. The Court notes that absent a compelling justification, the Parties are encouraged to consider lowering the amount of the requested attorney's fees to be more in line with those typically approved by courts in this district.

III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement

Agreement is denied without prejudice.  The Parties may reapply for approval of a settlement

that complies with the Court's determinations in this Order.

SO ORDERED.

DATED:        July 1, 2022
              White Plains, New York

                                              _____
                                              KENNETH M. KARAS
                                              UNITED STATES DISTRICT JUDGE